NO. 07-06-0206-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MAY 30, 2008
_____

MISTY DAWNNELLE FRITZ AKA MISTY DAWNNELLE POTTER
AKA MISTY DAWNNELLE MAGILL, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 119TH DISTRICT COURT OF TOM GREEN COUNTY;

NO. B-05-0897-S; HONORABLE BEN WOODWARD, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Raising four issues, appellant Misty Fritz appeals from her conviction by jury of delivery of a controlled substance[1] and the trial court's assessment of punishment at four years confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

_____

[1] *See* Tex. Health & Safety Code Ann. § 481.112(c) (Vernon 2001). This is a second degree felony punishable by confinement for a term of not more than 20 years or less than 2 years and a fine not to exceed $10,000. Tex. Penal Code Ann. § 12.33 (Vernon 2003).

Background

At trial, the State presented evidence to show that on August 27, 2004, Robert Parry, a certified police officer with the San Angelo Police Department Narcotics Task Force, utilized an informant, Sharon Johnson, in an undercover buy operation that involved appellant's husband John Fritz.[2] On that date, Detective Parry was to arrive at the location of the transaction, Cowboy Bob's Bar, and, by introduction through Johnson, meet with Fritz to purchase an "eight-ball" (3.5 grams) of methamphetamine.

When Fritz arrived at the predesignated time and place, appellant was with him in the car. Evidence showed that appellant went into the bar while her husband remained in the car. Johnson was tending bar when appellant came in, telling her that Fritz had sent her in. Johnson told appellant that the buyer was there and they walked outside through the back door of the bar. Johnson saw Detective Parry's truck in the parking lot, and told appellant where he was and that she would go get the money. Unexpectedly, appellant stopped her and said, "I've got it on me." Appellant thereupon reached her hand into her bra, and handed the drugs to Johnson.[3]

_____

[2] Initially, Detective Parry was targeting another individual with Johnson's cooperation, but when Johnson called the number she had for that person, John Fritz answered the phone. When he agreed to provide the methamphetamine, Fritz became the subject of the operation.

[3] Parts of the transaction were captured on tape by the audio/video recording system in Detective Parry's car and were also captured in photographs taken by the surveillance team in place.

From his truck, Detective Parry was unable to see Johnson and appellant as they came out of the bar but shortly thereafter Johnson walked up to Parry's vehicle, and gave him a plastic bag containing methamphetamine in the agreed-upon amount. Johnson explained that appellant had given her the drugs and that the Fritzes wanted her to bring them the money. Parry instead took the money to the Fritzes' vehicle, where appellant was standing in the open doorway of the passenger side. John Fritz was seated in the driver's seat of the car and Parry gave him $275. Johnson returned to the bar while Parry engaged in conversation with appellant and Fritz.

Analysis

*Court's Charge*

We address appellant's third issue first. Appellant argues the trial court erred in failing to instruct the jury on the law regarding testimony presented by a person covertly cooperating with police, pursuant to Texas Code of Criminal Procedure Article 38.141.[4]

---

[4] Tex. Code Crim. Proc. Ann. art. 38.141 (Vernon 2001). Article 38.141 provides: (a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed. (b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense. (c) In this article, "peace officer" means a person listed in Article 2.12, and "special investigator" means a person listed in Article 2.122.

3

Because of similarities between article 38.141 and article 38.14,[5] which requires corroboration of accomplice witness testimony, and because informants and similar "cooperating individuals" often have incentives to testify against the defendant that make their testimony inherently suspect, like that of accomplices, courts applying article 38.141 have looked to case law under article 38.14. *See Simmons v. State,* 205 S.W.3d 65, 71-72 (Tex.App.–Fort Worth 2006, no pet.); *Cantelon v. State,* 85 S.W.3d 457, 460 (Tex.App.–Austin 2002, no pet.) (both recognizing that article 38.141 reflects same legislative policy toward testimony of informants as that regarding testimony of accomplices, and that legislature, by article 38.141, has imposed the same standard of corroboration for an informant's testimony as that required for accomplice testimony by article 38.14); *Jefferson v. State*, 99 S.W.3d 790, 793 n.3 (Tex.App.–Eastland 2003 pet. ref'd); *Young v. State*, 95 S.W.3d 448, 450-51 (Tex.App.–Houston [1st Dist.] 2002, pet. ref'd) (also applying article 38.14 case law to article 38.141). The underlying premise is that such a witness is a discredited witness and that "the testimony of an accomplice witness is to be carefully scrutinized not only because of any interest he or she might have, but because her or his testimony is from a corrupt source." *Simmons,* 205 S.W.3d at 72, *citing Beathard v. State,* 767 S.W.2d 423, 429 (Tex.Crim.App. 1999). The purpose of article 38.14 is to assure that a jury does not consider an accomplice witness's testimony unless it finds that the witness is telling the truth and other evidence corroborates the discredited witness's testimony. *Cantelon,* 85 S.W.3d at 460.

---

[5] Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).

When the State elicits testimony from an accomplice for the purpose of proving a defendant's guilt, the defendant is entitled to an instruction that a conviction cannot be based on the accomplice testimony unless the jury believes the testimony to be true, and unless there is other evidence tending to connect the defendant to the offense. *Simmons,* 205 S.W.3d at 76, *citing Herron v. State,* 86 S.W.3d 621, 631 (Tex.Crim.App. 2002); *see Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App. 1991) (stating instruction requirement). A similar instruction is necessary when the State relies on testimony requiring corroboration under article 38.141. *Simmons*, 205 S.W.3d at 76.

Here, it is undisputed that Johnson was acting under the direction of the San Angelo Police Department. The record is clear also that Johnson was cooperating with police with the understanding that her cooperation would lead to a recommendation to the State that her pending drug charges would be lessened or dismissed. We agree with appellant the trial court was obligated to instruct the jury about the requirements of article 38.141. Because it did not, it erred.

Appellant did not object at trial to the court's failure to so instruct the jury. *See Herron v. State,* 86 S.W.3d 621, 632 (Tex.Crim.App. 2002) (applying harm analysis to similar errors). The failure to preserve jury-charge error is not a bar to appellate review, but rather establishes the degree of harm necessary for reversal. *Warner v. State,* 245 S.W.3d 458, 461 (Tex.Crim.App. 2008). Because appellant did not object to the instruction's omission, the error does not result in reversal "unless it was so egregious and created such harm that appellant was denied a fair trial." *Id.*

5

Failure to inform the jury of the requirement of corroboration of accomplice witness testimony "makes it possible for rational jurors to convict even absent corroboration which they find convincing." *Saunders v. State,* 817 S.W.2d 688, 692 (Tex.Crim.App. 1991). The defendant will not have been egregiously harmed by the omission of a corroborating-evidence instruction if other evidence than the testimony of the accomplice witness is present that fulfills the purpose of the instruction. *Simmons,* 205 S.W.3d at 77, *citing Herron,* 86 S.W.3d at 632. A harm analysis for error in omitting the cautionary instruction on the requirement of corroborating evidence must be "flexible," taking into consideration both the existence and the strength of such other evidence. *Id.* In determining the strength of the corroborating evidence, we must examine: (1) its reliability or believability; and (2) the strength of its tendency to connect the defendant to the offense. *Id.* Omission of the article 38.141 instruction will generally not result in egregious harm "unless the corroborating evidence is so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Simmons,* 205 S.W.3d at 77*, citing Saunders,* 817 S.W.2d at 689.

Evidence corroborating Johnson's testimony includes that provided by the testimony of Detective Parry and two other officers who observed events occurring behind the bar, and by photographs taken by one of those officers. We believe the jury would have found the evidence convincing that appellant arrived with her husband at the location and time at which he had agreed to make the drug sale. That evidence also shows John Fritz never left the vehicle but appellant went into the bar and came out with Johnson. As appellant emphasizes, no corroborating witness testified he saw appellant deliver drugs to Johnson

6

nor do the photographs introduced at trial depict the actual delivery of the drugs from appellant to Johnson. An officer testified, however, that he watched Johnson and appellant come out the back door of the bar and stop walking, then saw appellant "reach into her shirt,"[6] then saw Johnson walk to Parry's vehicle. Parry testified that very shortly after he phoned Johnson to tell her he had arrived, she walked up to his vehicle with the drugs. Parry left his vehicle, walked to the Fritzes' car, paid John Fritz the agreed-upon amount and spoke with both Fritz and appellant. Parry's testimony about his conversation with appellant and Fritz, which we discuss in more detail as we address appellant's fourth issue, provides further corroboration of appellant's role in the transaction. Appellant's remarks to Parry confirm her knowledge of the nature of the transaction, and serve to explain her actions observed by the officers. The corroborating evidence was provided by experienced officers, and the photographic evidence is consistent with their testimony. Parry's testimony that appellant provided him a telephone number for future transactions is confirmed by introduction of the note on which she wrote her name and the number, and supported by photographic evidence. We find the jury could have considered the corroborating evidence of her guilt reliable and believable, and that it had a strong tendency to connect her with the offense. *Simmons*, 205 S.W.3d at 77. The corroborating evidence is not so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive. Accordingly, while the trial court erred in failing to instruct the jury pursuant to

---

[6] The officer's testimony he saw appellant reach into her shirt thus corroborates Johnson's testimony in which she stated, "So we came out the door and around to the end of the pickups. [Appellant] stopped, she stuck her hand in her bra, handed me the dope. I walked right straight to [Parry's] pickup, handed it inside to him and told him that she had had it on her, and gave him the dope."

7

article 38.141, we conclude appellant did not suffer egregious harm from the court's failure to do so. We overrule appellant's third issue.

*Admission of Statements of John Fritz and Appellant*

We turn to appellant's fourth issue, by which she contends the trial court erred by admitting Parry's testimony of statements she and Fritz made during their conversation after Parry paid Fritz for the drugs. Appellant specifically challenges the admission of evidence of: (1) appellant's affirmative nod of her head in response to Parry's inquiry whether she and Fritz were able to provide larger quantities of methamphetamine; (2) Fritz's response that "Yeah, she weighs it all out" when Parry said the methamphetamine they sold him appeared to be the right amount; (3) appellant's handwritten note that contains her name and a phone number, provided to Parry in response to his question asking how to reach them to get larger quantities of methamphetamine; (4) appellant's statement to Parry as she handed him the note that "as we did more business and she could trust me, the price would go down"; and (5) Fritz's statement that they added $25.00 to the price of the methamphetamine Parry bought "for their trouble."

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Montgomery v. State,* 810 S.W.2d 372, 379-80 (Tex.Crim.App. 1990) (op. on reh'g). As long as the trial court's ruling was "within the zone of reasonable disagreement," its decision will be sustained. *Id.* at 391.

*Appellant's Statements*

We first address those statements admitted that are attributed to appellant. She asserts they were inadmissible hearsay. Rule of Evidence 801(e)(2)(A) provides that a statement is not hearsay if the statement is offered against a party and is the party's own statement in either an individual or representative capacity. Tex. R. Evid. 801(e)(2)(A). Appellant's affirmative nod of her head, her handwritten note, and her statement that the price would go down as they did more business with Detective Parry are all admissions by a party-opponent and thus are not hearsay. *See Bingham v. State,* 987 S.W.2d 54, 56 (Tex.Crim.App. 1999) (applying Rule 801(e)(2)(A)). The trial court did not abuse its discretion by admitting evidence of them.

*John Fritz's Statements*

Appellant contends Parry's testimony of statements made by John Fritz should not have been admitted because it was hearsay and because it contravened the United States Supreme Court's opinion in *Crawford v. Washington*.[7] In all state and federal criminal prosecutions, the accused has a right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, "to be confronted with the witnesses against him." U.S.

---

[7] We do not find in the record a specific objection to the evidence on Confrontation Clause grounds. *See Reyna v. State,* 168 S.W.3d 173, 179 (Tex.Crim.App. 2005) (requiring specific objection on that ground). Outside the presence of the jury, however, the trial court informed the attorneys it had undertaken a *Crawford* analysis and determined that it did not apply to the evidence. The State does not argue on appeal that no Confrontation Clause issue was preserved for appellate review. We consider appellant's contentions on that issue in conjunction with our analysis under the Texas Rules of Evidence.

Const. Amends. VI, XIV, *Crawford v. Washington,* 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177(2004), *Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). In *Crawford,* the Supreme Court held that the Confrontation Clause bars the admission of out-of-court testimonial statements made by a witness who does not testify unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. *Crawford,* 541 U.S. at 68. Therefore, to implicate the Confrontation Clause, an out-of-court statement must be (1) made by an absent witness and (2) testimonial in nature. *Id; King v. State,* 189 S.W.3d 347 (Tex.App.–Fort Worth 2006, no pet.).

The trial court determined that *Crawford* did not require exclusion of Fritz's statements, and found them admissible under Rule of Evidence 801(e)(2)(E), concerning statements by a co-conspirator of a party during the course and in furtherance of the conspiracy. Tex. R. Evid. 801(e)(2)(E). We agree with both of its conclusions.

Generally, a co-conspirator's statements made in the furtherance of the conspiracy are non-testimonial. *See Crawford,* 541 U.S. at 56 (stating, "most of the hearsay exceptions covered statements that by their nature were not testimonial-for example, business records or statements in furtherance of a conspiracy"). *See also Wiggins v. State,* 152 S.W.3d 656, 659 (Tex.App.–Texarkana 2004, pet. ref'd) (stating, "co-conspirator statements made in the furtherance of a conspiracy are nontestimonial"). Statements that are made in furtherance of a conspiracy include those made (1) with intent to induce another to deal with co-conspirators or in any other way to cooperate with or assist co-conspirators, (2) with intent to induce another to join the conspiracy, (3) in formulating future strategies of concealment to

10

benefit the concealment, (4) with intent to induce continued involvement in the conspiracy, or (5) for the purpose of identifying the role of one conspirator to another. *King,* 189 S.W.3d at 360. Conversely, statements that are not made in furtherance of a conspiracy, and thus remain hearsay, include those that are (1) casual admissions of culpability to someone the declarant had individually decided to trust; (2) mere narrative descriptions; (3) mere conversations between conspirators; or (4) "puffing" or "boasting" by co-conspirators. *Id.*

Appellant does not challenge the trial court's finding that appellant and her husband conspired to sell and deliver methamphetamine to Parry. She argues Fritz's statements were not made in furtherance of the conspiracy but were made in connection with a possible future sale. We disagree. Both the statements in question were made by Fritz during the consummation of Parry's purchase of the drugs. As noted, Fritz's response that "Yeah, she weighs it all out" was made in response to Parry's comment about the methamphetamine delivered to him on that occasion, and his other statement explained the price charged Parry for that same methamphetamine. We find the challenged statements fall within the parameters of Rule of Evidence 801(e)(2)(E). The trial court did not abuse its discretion in admitting evidence of them. Appellant's fourth issue is overruled.

*Corroboration of Johnson's Testimony*

Appellant's second issue presents her contention Johnson's testimony was not sufficiently corroborated to meet the requirements of article 38.141. Again, we look to case law concerning accomplice testimony to determine the sufficiency of the corroboration. *Simmons,* 205 S.W.3d at 71-72.

11

A challenge of insufficient corroboration is not the same as a challenge of insufficient evidence to support the verdict as a whole. *Cathey v. State,* 992 S.W.2d 460, 462-63 (Tex.Crim.App. 1999). To corroborate accomplice-witness testimony, "all the law requires is that there be s*ome* non-accomplice evidence which *tends* to connect the accused to the commission of the offense. While individually these circumstances might not be sufficient to corroborate the accomplice testimony, taken together, rational jurors could conclude that this evidence sufficiently *tended* to connect appellant to the offense." *Hernandez v. State,* 939 S.W.2d 173, 178-79 (Tex.Crim.App. 1997), *citing Cox v. State,* 830 S.W.2d 609, 612 (Tex.Crim.App. 1992); *Cantelon v. State,* 85 S.W.3d 457, 460-61 (Tex.App.–Austin 2002, no pet.).

To determine the sufficiency of the corroboration, we eliminate the testimony of the accomplice and ask whether other inculpatory evidence tends to connect the accused to the commission of the offense, even if it does not directly link the accused to the crime. *McDuff v. State,* 939 S.W.2d 607, 612 (Tex.Crim.App.1997), *Casias v. State,* 36 S.W.3d 897, 901 (Tex.App.–Austin 2001, no pet.). We must view the corroborating evidence in the light most favorable to the verdict. *Knox v. State,* 934 S.W.2d 678, 686-87 (Tex.Crim.App. 1996); *Gill v. State,* 873 S.W.2d 45, 48 (Tex.Crim.App. 1994).

As we have noted, the evidence presented through witnesses other than Johnson showed more than appellant's presence at the scene of the drug transaction. It showed her interaction with Johnson while appellant's husband remained in the car. Her remarks to Parry showed her knowledge of the purpose of their dealings, and her intent. The evidence

corroborating Johnson's testimony is sufficient to satisfy the "tends-to-connect" standard. *See Jeffrey v. State,* 169 S.W.3d 439 (Tex.App.–Texarkana 2005, pet. ref'd) (applying standard in covert witness case). We overrule appellant's second point of error.

*Legal and Factual Sufficiency*

By appellant's first issue, she contends the evidence is legally and factually insufficient to show that she actually delivered methamphetamine.

In reviewing issues of legal sufficiency, an appellate court views the evidence in the light most favorable to the verdict to determine whether a rational fact finder could have found each element of the offense beyond a reasonable doubt. *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App. 2003); *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App. 2001), *citing Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If, based on all the evidence, a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal. *Swearingen,* 101 S.W.3d at 95, *citing Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).

In performing a factual sufficiency review, we view all the evidence in a neutral light, giving deference to the fact finder's determinations if supported by the record and may not order a new trial simply because we may disagree with the verdict. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006); *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006); *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). As an

appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* The criminal verdict will be set aside "only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence so strong that the standard of proof beyond a reasonable doubt could not have been met." *Garza v. State,* 213 S.W.3d 338, 343 (Tex.Crim.App. 2007).

Appellant's evidentiary sufficiency argument is founded on the fact no witness but Johnson could give direct evidence of appellant's delivery of the methamphetamine.[8] However, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). As we have related, one officer testified he saw appellant reach into her shirt during her interaction with Johnson, but no officer could testify he saw appellant hand the drugs to Johnson, nor do the photographs or the videotape depict the actual transfer. We reject appellant's sufficiency argument for several reasons. First, the jury was free to believe and rely on Johnson's testimony. Section 38.141 does not render the testimony of a person cooperating with police incompetent. In fact, section 38.141 does not even say that the jury should be skeptical of the testimony or that the jury should give less weight to such testimony than to other evidence. *Herron,* 86 S.W.3d at 632. Instead, once it is determined that corroborating evidence exists, the purpose of the 38.141

---

[8] Appellant acknowledges that evidence a defendant delivered a controlled substance to an agent of an undercover officer is sufficient to support conviction for actual transfer to the officer. *See Marable v. State*, 85 S.W.3d 287, 291 (Tex.Crim.App. 2002) (Cochran, J., concurring), *citing Heberling v. State*, 834 S.W.2d 350, 354 (Tex.Crim.App. 1992).

14

instruction is fulfilled and the instruction plays no further role in the factfinder's decision-making. *Id.* Second, the circumstances to which the officers testified and the photographs depict support a conclusion appellant gave the methamphetamine to Johnson just as she said. The jury heard an officer testify he watched Johnson walk to Parry's vehicle directly after her interaction with appellant.[9] Third, as appellant acknowledges, John Fritz's statements to Parry corroborate his involvement in the offense. Appellant's actions during that conversation make little sense unless she delivered the methamphetamine for which Parry paid her husband.

We find, after viewing the evidence in the appropriate light, that a rational jury could have found each element of the offense beyond a reasonable doubt. Further, we cannot point to an objective basis in the record that demonstrates that the great weight and preponderance of the evidence contradicts the jury's verdict. Appellant's first issue is overruled.

Having overruled appellant's issues, we affirm the trial court's judgment.

James T. Campbell
Justice

Do not publish.

---

[9] Some testimony suggests that as short a time as eight seconds may have elapsed between Johnson's interaction with appellant and her appearance at Parry's vehicle window.